UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 06-192 (PAM / SRN) |
| Plaintiff, | |
| | **REPORT & RECOMMENDATION** |
| v. | |
| DAN THANH NGUYEN, | |
| Defendant. | |

Joseph T. Dixon, III, Assistant United States Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415.

John S. Hughes, 247 Third Street South, Minneapolis, MN 55415, for Defendant.

This matter comes before the undersigned United States Magistrate Judge on Defendant's Motion to Suppress Evidence (Doc. No. 28). Defendant moves to suppress evidence seized pursuant to a search warrant that he argues is invalid because it was not supported by probable cause and is not saved by the "good faith" rule announced in United States v. Leon, 468 U.S. 897 (1984). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, the Court recommends that the motion be denied.

**I.   FACTUAL SUMMARY**

On February 8, 2005, Detective John Blasingame of the Brooklyn Park Police Department ("Affiant") prepared an application for a search warrant of Defendant's residence. (Govt's Ex. 1.) Affiant stated that he had received specialized training and experience "in the investigation of financial crimes, identity theft, [and] computer related offenses." (Id.) Affiant stated that he had learned from United States Postal Inspector Troy Sabby that Marshall Field's Fraud Investigator Joe Brunette contacted Inspector Sabby regarding the use of the U.S. Mail to

defraud Marshall Field's. (Id.) Investigator Brunette informed Inspector Sabby that he believed Defendant had implemented a "bust out scheme" using Defendant's Marshall Field's credit card, by which Defendant would first max-out his credit limit and then send Marshall Field's a fraudulent check drawn against the account of Troung Pham as payment, only to then max-out his credit line again before the check cleared the payor bank. (Id.) Defendant allegedly repeated this several times, sending Marshall Field's $42,000 in purported payments by such checks, before Marshall Field's discovered that he had charged over $33,000 of merchandise. (Id.)

Inspector Sabby then interviewed Mr. Pham, who indicated that the checks at issue were from an account that Mr. Pham had closed over three years earlier. (Id.) Mr. Pham also stated that he did not write any of the checks, did not give any checks to Defendant and did not know any checks for the closed account were missing. (Id.)

Affiant also stated that Investigator Brunette obtained Marshall Field's surveillance videos that "clearly show [Defendant] and Hoan John Le" purchasing merchandise. (Id.) Investigator Brunette also had followed the suspects to a vehicle registered to a woman later identified as Mr. Le's wife and Defendant's sister. (Id.) In addition, Affiant stated that additional video showed that woman returning for cash three expensive purses purchased by Defendant and Mr. Le on Defendant's Marshall Field's credit card. (Id.)

Affiant also stated that Inspector Sabby learned through additional investigation that Defendant had "defrauded at least nine banks and credit card companies for a total loss of approximately $80,000," by tendering as payment checks drawn against the same closed account of Mr. Pham at issue here. (Id.)

Affiant then confirmed that Mr. Le and his wife resided at 9155 Louisiana Ave. North in Brooklyn Park and that Defendant resided at 7529 West River Road in Brooklyn Park. (Id.)

2

Affiant thus requested a search warrant for Defendant's residence. (Id.)

On the basis of this evidence, Judge Isabel Gomez of Hennepin County District Court signed the warrant. Officers executing the warrant on February 9, 2005, located evidence of the fraud described above. Defendant was arrested and charged with twelve counts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343. Defendant now moves to suppress that evidence on the ground that it was obtained pursuant to a constitutionally defective search warrant.

## II.     DISCUSSION

Defendant argues (1) that the search warrant was defective because the supporting affidavit failed to establish probable cause, (2) that no officer executing the warrant could reasonably rely on it pursuant to the "good faith" exception of Leon, and (3) that all evidence, including Mr. Nguyen's statements immediately following the execution of the warrant, obtained pursuant to that search is therefore inadmissible.

### A.     The Search Warrant Was Not Constitutionally Defective

Defendant attacks the search warrant signed by Judge Gomez on several grounds. Defendant (1) assails the reliability and bases of knowledge of the affiant's sources, (2) argues that the information was stale by the time the warrant was sought and obtained, (3) contends that there was no basis to assume Defendant was the actual perpetrator, and (4) claims that there was an inadequate nexus between the contraband and the premises searched.

Judicial scrutiny "of the sufficiency of an affidavit should not take the form of *de novo* review," and the reviewing court should accord "'great deference'" to a determination of probable cause. Illinois v. Gates, 462 U.S. 213, 236 (1983) (internal citations omitted).

In Illinois v. Gates, the Supreme Court clarified the standard governing the probable cause required for a search warrant based on a confidential informant's tip. 462 U.S. 213, 217

3

(1983). The Supreme Court rejected any rigid framework that would require the independent satisfaction of specific tests for both (1) the basis of an informant's knowledge and (2) informant veracity (itself divided into sub-components of credibility and reliability). Id. at 228-29 & n.4. Instead, while these components "are all highly relevant," they are not separate tests, but rather "intertwined issues" in an overall "totality-of-the-circumstances approach" to the "commonsense, practical question" of probable cause. Id. at 230. The Fourth Amendment thus requires only that the issuing magistrate "had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." Id. at 236. The magistrate need only conclude that "given all the circumstances . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 237. Thus, "'affidavits should be read with common sense and not in a grudging, hyper technical fashion.'" United States v. Goodson, 165 F.3d 610, 613 (8th Cir. 1999).

### 1.    The Affiant Properly Relied Upon His Sources' Information

Defendant first claims that the supporting affidavit "relied heavily on information supplied by" Inspector Sabby, "who, in turn, relied heavily on information supplied by" two investigators employed by private institutions. (Mem. at 4.)

Defendant thus seems to first argue that the affidavit was not confined to the Affiant's own personal knowledge. But it is well-settled that all of the information in an Affidavit need not be based on the personal knowledge of the affiant. Indeed, an affidavit may rest "wholly on hearsay" as long as "a substantial basis for crediting the hearsay is presented." Jones v. United States, 362 U.S. 257, 269 (1960) ("We conclude therefore that hearsay may be the basis for a warrant."), overruled on other grounds, United States v. Salvucci, 448 U.S. 83, 85 (1980) (overruling automatic standing rule of Jones). The fact that the affiant is the last link in a chain

of such information does not necessarily render the affidavit constitutionally defective. Cf. United States v. Mahler, 442 F.2d 1172, 1174 (9th Cir. 1971) (affirming conviction over warrant challenge where affiant was "an F.B.I. agent at San Diego, who detailed information received from an F.B.I. agent at Tucson, who got most of his information from the victim").

Defendant's central claim, however, is that the affidavit "fails to state how [the affiant's sources] came to know the facts as alleged" and "fails to state at all why the affiant officer believed these informants to be reliable." (Mem. at 4; see also id. at 5 (questioning source's "reliability" and bases of knowledge); id. at 6 (claiming lack of corroboration).) Defendant thus characterizes the sources of the affiant's information as "informants" and questions their reliability and veracity, claiming that little of the information obtained from them was corroborated by law enforcement officers. (Mem. at 3-6.)[1]

But this is not a case of the conventional "confidential informant"–an unnamed person who is often himself a member of the "criminal milieu" and who has provided law enforcement with tips of criminal activity. Here, in contrast, the affidavit was based on (1) Affiant's own personal knowledge and experience, (2) information from a Postal Inspector, (3) information from fraud investigators employed by private entities that were victims of Defendant's alleged fraud, and (4) information from citizens who were not regular or paid "informants."

The Eighth Circuit has clarified that "[p]robable cause may be found [(1)] in hearsay statements from reliable persons, [(2)] in hearsay statements from confidential informants

---

[1] Defendant contends these failures in the affidavit are crucial because the underlying evidence is flawed. For example, he claims that the surveillance videos do not clearly show himself and Mr. Le as the individuals making the purchases. (Mem. at 5.) But the courts "may not look to facts outside of the affidavit to determine probable cause." United States v. Martin, 833 F.2d 752, 755-56 (8th Cir. 1987). Rather, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Etheridge, 165 F.3d 655, 656 (8th Cir. 1999) (internal citation omitted).

5

corroborated by independent investigation, or [(3)] in observations made by trained law enforcement officers." Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998) (internal citations omitted). Here, all of the evidence comes from sources of types (1) and (3), and none from type (2), that is, confidential informants.

The showings of reliability and veracity that the Defendant demands here are required, of course, of confidential informants. But those requirements are imposed less, if at all, on victims, witnesses and mere "citizen-informants" as opposed to professional informants. 2 LaFave, Search and Seizure § 3.4(a), at pp. 218-21 (4th ed. 2004) (citing Jaben v. United States, 381 U.S. 214 (1965) (distinguishing between need for corroboration of narcotics informant's credibility, and lesser need in tax evasion case); United States v. Harris, 403 U.S. 573, 599 (1971) (Harlan, J., dissenting) ("I think there is much truth in the Government's supporting assertion that the ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis.")).

"The lower courts have rather consistently held that the proof-of-veracity rules which obtain in informant cases are not applicable with respect to other sources of information." 2 LaFave, supra, § 3.4(a), at p. 220. "'[A] citizen informant is inherently more reliable than the usual police informants who are often mired in some criminal activity themselves.'" Edwards v. Cabrera, 58 F.3d 290, 294 (7th Cir. 1995) (internal citation omitted). Thus, where an affiant recites information obtained from "a private citizen and a victim," the usual degree of corroboration is not required. United States v. Lewis, 738 F.2d 916, 922 (8th Cir. 1984) (rejecting challenge to source's credibility and reliability). Accord United States v. Ross, 713 F.2d 389, 393 (8th Cir. 1983) ("We here deal with a citizen informant with no motive to falsify, rather than a professional informant, with attendant credibility concerns."); see also United

States v. Patane, 304 F.3d 1013, 1016-17 (10th Cir. 2002) (relying on "the presumption of veracity accorded other victim-witnesses"), rev'd on other grounds, 542 U.S. 630 (2004) (effect of failure to give Miranda warnings); United States v. Sparks, 265 F.3d 825, 830 (9th Cir. 2001) ("This was not an unreliable criminal informant, but a complaining victim who had no apparent reason to lie."); United States v. Burbridge, 252 F.3d 775, 778 (5th Cir. 2001) (stating that "[a]n ordinary citizen's eyewitness account . . . is normally sufficient to supply probable cause" without further corroboration).

      Moreover, the primary sources of information here were not just citizen witnesses or victims. Affiant had obtained much of his information from a United States Postal Inspector. Affiant could reasonably rely on information from such a federal official without independent corroboration of that official's veracity and reliability. Cf. United States v. Lewis, 738 F.2d 916 (8th Cir. 1984) (rejecting claim of lack of probable cause where private citizen assisted postal inspector in investigation of mail fraud via fraudulent credit card scheme).

      The Court sees no reason to treat a postal inspector differently from a police officer. Police officers "are entitled to a presumption of credibility when they are the unnamed informants in an affidavit supporting a search warrant application." United States v. Apker, 705 F.2d 293, 303 (8th Cir. 1983), abrogated on other grounds, Maryland v. Macon, 472 U.S. 463 (1985) (limiting "scrupulous exactitude" standard for searches implicating First Amendment to prior restraint context). Accord Velardi v. Walsh, 40 F.3d 569, 574 (2d Cir. 1994) ("The observations of fellow officers are a reliable basis upon which to determine probable cause."); United States v. Spears, 965 F.2d 262, 277 (7th Cir. 1992) (stating that "a magistrate is entitled to regard an affiant's fellow law enforcement officers as reliable sources" and the affidavit need not provide any indicia of their reliability or the basis of their knowledge); United States v. Harrick,

582 F.2d 329, 332 (4th Cir. 1978) ("When an officer applies for a search warrant based on information supplied by fellow officers, it is unnecessary for him to vouch the reasons he has for believing his informants are reliable.").

The Postal Inspector in turn relied on information from a fraud investigator employed by the defrauded retailer. Although that investigator might not strictly qualify as a law enforcement officer, some deference to the investigator's statements seems warranted in light of the fact that the investigator's knowledge is obtained, and his statements to law enforcement are provided, pursuant to the investigator's professional obligations. And in any event, the investigator is the agent of the corporate victim and it is well-settled that "[h]earsay statements from victims are considered reliable." United States v. Armstrong, 654 F.2d 1328, 1335 (9th Cir. 1981).

The Postal Inspector also obtained some of his information from the individual whose checks had been used in the scheme. Even assuming that this individual was not a "victim" whose information could be deemed reliable without independent corroboration, but was merely a citizen, there still is no need for independent corroboration. There is no strict requirement that the statements of an average citizen must be corroborated by law enforcement to establish the requisite reliability to support probable cause. United States v. Blount, 123 F.3d 831, 836 (5th Cir. 1997) (citing Illinois v. Gates, 462 U.S. 213, 233-34 (1983)).

### 2.   The Information Was Not Stale

Defendant next contends that the information supporting the warrant, which was based on an affidavit submitted on February 8, 2005, was stale because the last transaction at issue occurred on December 30, 2004. (Mem. at 8.) The government counters by noting that "[t]he evidence that was sought–documentary evidence and merchandise–is not perishable and would likely still be maintained in that time frame." (Mem. at 4.)

Although delay in seeking and obtaining a search warrant may invalidate it, lapse of time alone is not necessarily controlling because other factors–"'including the nature of the criminal activity involved, and the kind of property for which authority to search is sought'"–are relevant. United States v. Ozar, 50 F.3d 1440, 1446 (8th Cir. 1995) (internal citation omitted). Thus, delay "is less significant when there is cause to suspect continuing criminal activity." Id. (addressing conspiracy to commit bank fraud).

Here, in light of the fact that Defendant had engaged in similar credit card schemes against numerous other retailers and banks over many previous months, Defendant's pattern of fraudulent behavior suggests continuing criminal activity. And under the circumstances the evidence sought was the type of property that would likely have remained on the premises. In sum, the delay of some five or six weeks does not render the warrant stale so as to invalidate it as a matter of law.

### 3. There Was Sufficient Basis to Conclude that Defendant Was The Perpetrator

Defendant also argues that the affidavit provided "no indication as to how and why any law enforcement officer or informant came to [the] conclusions regarding the identity of the person alleged to have engaged in these transactions." (Mem. at 9.) He claims that the surveillance videos should have been compared to police file photographs or otherwise independently confirmed. (Id.)

The government counters that Defendant's argument ignores the governing "common sense approach." (Mem. at 4.) The government notes that "the mere fact that purchases are being made with an individual's charge card establishes" the requisite probable cause and notes that the defrauded retailer identified the account holder after reviewing the surveillance videos. (Id. at 4-5.) Moreover, the affidavit also cited other evidence linking Defendant to the

9

transactions–chiefly that the retailer's fraud investigator followed the suspects to a vehicle registered to a woman who was Defendant's sister and the wife of his accomplice.

These facts suffice to satisfy the probable cause standard. And insofar as Defendant argues that probable cause requires certainty or something reasonably close, the Supreme Court has clarified that "'the *quanta* . . . of proof'" necessary to support the issuing magistrate's decision of probable cause is not subject to "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence." Illinois v. Gates, 462 U.S. 213, 235 (1983) (internal citation omitted).

### 4. An Adequate Nexus Existed Between the Contraband and Defendant's Residence

Defendant's final argument regarding the warrant is that the supporting affidavit "failed to set forth any indication that any documents, checks or merchandise purchased as part of the alleged bust-out scheme would be found at Mr. Nguyen's residence." (Mem. at 10.)

"[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000). But the requisite nexus does not require certainty. Rather, probable cause for a search warrant "means 'a fair probability that contraband or evidence of a crime will be found in a particular place' given the circumstances set forth in the affidavit.'" Id. at 549 (internal citation omitted) (emphasis added).

Here, that nexus is provided by common-sense inference based on the nature of the offense. As the government notes, the evidence that the warrant addressed–"credit card statements and merchandise purchased by an individual–is commonly sent to a person at their address and/or kept by the person at their residence." (Mem. at 5-6.) In addition, it is a fair inference that the fraudulently-purchased goods would be found in Defendant's residence where

those goods were such items as jewelry, clothing, and home electronics and furnishings, particularly where there was no evidence that he immediately sold those goods or stored them elsewhere.

Defendant's reliance on United States v. Bacote, No. 05-CR-234, 2005 WL 3143987 (D. Minn. Nov. 23, 2005), is misplaced.  In Bacote, the warrant to search the defendant's residence was invalid because the supporting affidavit "contain[ed] no dates" establishing that the suspicious activities had occurred recently enough to support probable cause that criminal activity would be presently found.  Id. at *3.  Also, most of the observed suspicious activity occurred at a different property at which the defendant did not reside.  Id.  Finally, unlike the affidavit at issue here, some of the supporting information was provided by a confidential informant but not corroborated.  Id.

In sum, reading the affidavit as a whole under the totality-of-the-circumstances test, there is no basis to reject the issuing judge's determination of probable cause.

### B. Even If the Warrant Was Invalid, An Executing Officer Could Have Reasonably Relied Upon It Under Leon

Defendant argues that the "good faith" exception articulated by the Supreme Court in United States v. Leon, 468 U.S. 897, 920 (1984), does not apply here.  In Leon, the Court ruled that evidence obtained pursuant to a defective search warrant was nonetheless generally admissible "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope."  Id. at 920.  But the exception does not apply where, for example, the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  Id. at 923 (internal citation omitted) (also delineating three other situations where the exception does not apply, none of which Defendant claims here).

In light of the Court's determination that the search warrant at issue was not defective, any question as to whether a defective warrant was nonetheless reasonably relied upon by the executing officers is moot. Nevertheless, the Court believes that even assuming that the warrant was somehow defective here, officers executing that warrant in good faith could have reasonably relied upon it. The supporting affidavit recited sufficient incriminating facts that were obtained by fellow law enforcement officers, private fraud investigators and other trustworthy sources–not confidential informants–and that linked the Defendant to the crimes at issue and, under the circumstances, justified a search of his home.[2]

### C. The Tree Was Not Poisonous

Finally, Defendant argues that statements given by him shortly after the execution of the allegedly-invalid warrant must be suppressed as "fruit of the poisonous tree." See United States v. Yousif, 308 F.3d 820, 832 (8th Cir. 2002). But in light of the Court's determinations above that the search was constitutionally valid, there is no issue as to whether evidence obtained pursuant to that warrant, such as Defendant's statements, were tainted.

### III. CONCLUSION

Under the governing "totality-of-the-circumstances" test, the search warrant signed by Judge Gomez is not constitutionally invalid. And even assuming it was defective, the executing officers could have reasonably relied upon it in good faith. Thus there can be no valid issue of

---

[2] Defendant argues that the executing officer could not rely on the affidavit because it did not connect "the alleged criminal activity to [Defendant] or [his] residence," claiming that "later evidence proved that there was some mistake or confusion regarding this issue." (Mem. at 14 (citing Postal Inspector's report that mistakenly identifies Defendant's accomplice).) But the executing officer can not, of course, be held to a standard that requires him to question the affidavit–which stated that the surveillance videos "clearly show [Defendant] and Hoan John Le . . . purchasing merchandise"–based on other evidence that is outside of the warrant and not before him.

any resulting evidence being "fruit of the poisonous tree."

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion to suppress evidence seized pursuant to invalid search warrants (Docket No. 28), be DENIED.


Dated: October 27, 2006

              s/ Susan Richard Nelson
             SUSAN RICHARD NELSON
             United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by November 10, 2006, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.